UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Aruchunan Anthony Armstrong,

        Plaintiff,

vs.

Michael J. Astrue, Commissioner
of Social Security,

        Defendant.         Civ. No. 07-4310 (JNE/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I. Introduction

The Plaintiff commenced this action, pursuant to Section 205(g) of the Social Security Act, Title 42 U.S.C. §405(g), seeking a judicial review of the Commissioner's final decision, which reduced his monthly Social Security benefits. The Plaintiff also asserts several tort claims against the Defendant, pursuant to the Federal Tort Claims Act ("FTCA"), Title 28 U.S.C. §1346(b)(1). The matter is now before the Court upon the Plaintiff's Motion for Summary Judgment, and upon the Defendant's Motion to Dismiss for lack of jurisdiction. The Plaintiff appears pro se,

and the Defendant appears by Lonnie F. Bryan, Assistant United States Attorney.  For reasons which follow, we recommend that the Plaintiff's Motion for Summary Judgment be denied, but without prejudice, that the Defendant's Motion to Dismiss be granted, and that the Plaintiff's Complaint be dismissed, in its entirety.

## II. Factual and Procedural Background.

The Plaintiff first applied for Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"), in November of 1998.  See, Complaint, Docket No. 1, at ¶5.  His application was denied, and his appeal of that decision was unsuccessful.  Id.; see also, Declaration of Earnest Baskerville ("Baskerville Decl."), Docket No. 32, at ¶3, Exhibit C.  However, on November 17, 2000, the Plaintiff again applied for DIB and SSI, and the State Agency concluded that he was disabled, as of November 1, 2000.   Id.; see also, Baskerville Decl., supra at ¶3, Exhibit C.  Accordingly, the Plaintiff began receiving monthly benefit checks from the Social Security Administration (the "SSA").[1]  Id.

On April 10, 2006, the SSA informed the Plaintiff that the State of Minnesota would not pay his monthly Medicare premiums after February of 2006.  Id. at ¶7; see

_____

[1]It is not entirely clear, on this Record, whether the Plaintiff is receiving DIB or SSI benefits, or both.  However, the difference is not dispositive to the issues before us.

also, Plaintiff's Exhibits to Complaint, Docket No. 8, at E-1.  Accordingly, the SSA

advised that the Plaintiff's monthly Social Security benefits would be reduced, in

order to cover the costs of his Medicare premiums.  Id.  The letter also purported to

advise the Plaintiff of his options for challenging that deduction.  See, Plaintiff's

Exhibits to Complaint, supra at E-1 ("Later in this letter, we tell you what to do if you

disagree with this change in the amount of your monthly payment.").  According to

the Plaintiff, he concluded that the deduction, in the amount of $88.50, "was a

pittance," and as a result, he "disregarded the matter."  See, Complaint, supra at ¶7.

Thereafter, on December 29, 2006, the SSA sent the Plaintiff another letter,

which advised that the State of Minnesota would not pay his Medicare premiums after

December of 2006.  Id. at ¶8; see also, Plaintiff's Exhibits to Complaint, supra at E-2.

Accordingly, the SSA advised that the Plaintiff's monthly Social Security benefits

would be reduced, in order to cover the costs of his Medicare premiums.  Id.  The

letter again advised the Plaintiff of his options for challenging the deduction.  See,

Plaintiff's Exhibits to Complaint, supra at E-2.

The Plaintiff was concerned that the SSA was double-charging him for his

Medicare premiums.  Id. at ¶¶8-9.  Accordingly, between December of 2006, and

- 3 -

March of 2007, the Plaintiff contacted the SSA several times, both in person, and by telephone, in order to challenge the deduction.[2] Id. at ¶¶10-12.

On April 23, 2007, after concluding that his efforts had been unsuccessful, the Plaintiff filed a Request for Reconsideration. Id. at ¶13. The Plaintiff contends that, on June 27, 2007, he received a Reconsideration decision, which denied his request for a refund. Id. at ¶14, citing Plaintiff's Exhibits to Complaint, supra at B-1. In his Complaint, the Plaintiff alleges that, on September 21, 2007, he mailed a Request for Hearing to his local SSA office, and he included an explanation for his failure to file the Request within the sixty (60) day time limit. Id.

The Plaintiff also alleges that, on October 3, 2007, before receiving any response from his local SSA office, he mailed the same Request for Hearing, with the same explanation for his late filing, to the SSA office in Minneapolis, Minnesota. Id. In addition, the Plaintiff alleges that, on October 3, 2007, he traveled to his local SSA office, in order to submit a copy of his Request for Hearing in person, but the SSA

---

[2]The Plaintiff has submitted documents which reflect that his Medicare premiums have been continuously paid by the State of Minnesota. See, Plaintiff's Exhibits to Complaint, supra at B-2, B-3. He has also submitted documents which reveal that the SSA initially withheld monies to pay for his Medicare premiums, but ultimately, refunded those monies, after learning that the Plaintiff's premiums were being paid by the State. Id. at B-1.

refused to accept the Request for Hearing, because it was not accompanied by the Reconsideration decision.  Id. at ¶¶16-17.

Accordingly, on October 19, 2007, the Plaintiff commenced this action, in which he asserts four (4) tort claims against the Defendant.  First, the Plaintiff asserts a claim for negligence, based upon the SSA's allegedly erroneous deduction from his monthly benefits, which the Plaintiff asserts caused him a financial injury.  See, Complaint, supra at ¶¶19-27.  Second, the Plaintiff asserts a claim for negligence per se because, he contends, that the SSA's negligence caused him physical injury, by depriving him of the funds to pay for his over-the-counter medications.  Id. at ¶¶28-31.

The Plaintiff also asserts two (2) claims for negligent infliction of emotion distress ("NIED"), against Ms. McCanon, and Mr. Baker, who are alleged to be SSA employees.  Id. at ¶¶32-49.  In his Complaint, the Plaintiff does not assert any facts which relate to either Ms. McCanon, or Mr. Baker.[3]  However, in his Affidavits, the

---

[3]Although the Plaintiff alleges facts which make mention of other alleged SSA employees, he has not asserted any claims against any of those named individuals. See, Complaint, supra at ¶¶12-13, 16-18; see also, Plaintiff's First Affidavit, Docket No. 11; Plaintiff's Second Affidavit, Docket No. 12; Plaintiff's Third Affidavit, Docket No. 13.

Plaintiff provides additional background, which explains the basis for his claims against Ms. McCanon and Mr. Baker.[4]

With respect to the Plaintiff's claim against Mr. Baker, in his Third Affidavit, the Plaintiff avers that he visited his local SSA office in October of 2007, in order to challenge the deduction from his monthly benefits. See, <u>Plaintiff's Third Affidavit</u>, <u>Docket No. 13</u>, at ¶¶1, 3.  The Plaintiff avers that Mr. Baker, who he identifies as an SSA employee, brought the Plaintiff to a cubicle, so as to discuss the deduction.  <u>Id.</u> at ¶¶3-14.   According to the Plaintiff, Mr. Baker explained that an erroneous deduction had been made, and that the Plaintiff would eventually receive a refund check.  <u>Id.</u> at ¶¶3-14.

The Plaintiff then asked to speak with Mr. Baker's supervisor.  <u>Id.</u> at ¶17.  The Plaintiff avers that Mr. Baker agreed to find a supervisor, but that Mr. Baker also made what the Plaintiff deems an offensive, abusive, and inappropriate, comment to him.  <u>Id.</u> at ¶¶18-23.  The Plaintiff contends that he responded by shouting angrily at

---

[4]In addition to submitting Exhibits to his Complaint, see, <u>Docket No. 8</u>, the Plaintiff has also submitted three Affidavits, see, <u>Docket Nos. 11-13</u>, which he references in his Complaint, see, <u>Complaint</u>, supra at ¶¶1, 12, 17, and which outline his claims against Ms. McCanon and Mr. Baker.  The Plaintiff reiterates his claims against Ms. McCanon and Mr. Baker, in his Motion for Summary Judgment.  See, <u>Plaintiff's Motion for Summary Judgment</u>, <u>Docket No. 17</u>, at pp. 5-8.

Mr. Baker. Id. at ¶23. In his Complaint, the Plaintiff asserts a claim for NIED, based upon Mr. Baker's "verbally abusive action," against Mr. Baker's employer, the Defendant. See, Complaint, supra at ¶¶41-49.

With respect to the Plaintiff's claim against Ms. McCanon, some additional background is required. On June 4, 2007 -- in the midst of the Plaintiff's efforts to challenge the deduction from his monthly benefits -- the Plaintiff received a letter from the SSA, which advised that his benefits would cease, based upon the SSA's determination that his health had improved, and that he was no longer unable to work. See, Plaintiff's Exhibits to Complaint, supra at E-3. In the letter, the SSA advised that the Plaintiff had sixty (60) days to appeal the decision to cease his benefits. Id. It also advised that, if the Plaintiff wished to continue receiving benefits during his appeal, he must submit a request for the continuation of benefits, within ten (10) days. Id.

In his Second Affidavit, the Plaintiff avers that he requested an appeal, and requested a continuation of benefits during the appeal, by sending a letter to the SSA on June 11, 2007. See, Plaintiff's Second Affidavit, Docket No. 12, at 2. However, on June 13, 2007, the Plaintiff spoke to Ms. McCanon who, he avers, is an SSA employee, and who advised the Plaintiff that his letter was not sufficient to request a continuation of benefits. Id. at ¶3. In a subsequent voicemail message, Ms. McCanon

advised that she had spoken with her supervisor, Mr. Fugina, and Ms. McCanon confirmed that the Plaintiff's benefits would cease if he did not submit appropriate paperwork, for a continuation of benefits, by June 15, 2007. Id. at ¶¶3-4. The Plaintiff understood that he was being directed to submit all of his paperwork relating to his appeal, rather than just his request for a continuation of benefits, within ten (10) days. Id. at ¶¶4-19. The Plaintiff avers that his conversation with Ms. McCanon caused him to suffer acute anxiety and depression. Id. at ¶5.

The Plaintiff further attests that, on June 19, 2007, he subsequently called the local SSA office to clarify when his appeal documents were due. Id. at ¶27. He was advised that his letter was insufficient to initiate an appeal, and that he should complete a Reconsideration Form. Id. The Plaintiff was further advised that he should fill out the Reconsideration form immediately, for the continuation of his benefits, but that he could complete any additional paperwork within the sixty (60) day time limit for appeals. Id. at ¶32.

Ultimately, the Plaintiff successfully appealed the SSA's decision and, on September 17, 2007, the SSA issued a decision which found that his disability had not ended, and that his benefits would continue. See, Plaintiff's Exhibits to Complaint, supra at E-4. However, he asserts a claim for NIED, based upon the "psychological

- 8 -

damage" he suffered as a result of Ms. McCanon's conduct, against Ms. McCanon's employer, the Defendant.  See, <u>Complaint</u>, supra at ¶¶32-40.

III.  <u>Discussion</u>

A.     <u>The Plaintiff's Motion for Summary Judgment</u>.

1.     <u>Standard of Review</u>.  Summary Judgment is not an acceptable means of resolving triable issues, nor is it a disfavored procedural shortcut when there are no issues which require the unique proficiencies of a Jury in weighing the evidence, and in rendering credibility determinations.  See, <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986); <u>Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.</u>, 387 F.3d 705, 711 (8th Cir. 2004), cert. denied, 544 U.S. 977 (2005).

Summary Judgment is appropriate when we have viewed the facts, and the inferences drawn from those facts, in a light most favorable to the nonmoving party, and we have found no triable issue.  See, <u>Eide v. Grey Fox Technical Servs. Corp.</u>, 329 F.3d 600, 604 (8th Cir. 2003); <u>Philip v. Ford Motor Co.</u>, 328 F.3d 1020, 1023 (8th Cir. 2003); <u>United Fire & Casualty Co. v. Garvey</u>, 328 F.3d 411, 413 (8th Cir. 2003). For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case, while a dispute is "genuine" if the evidence is such that a reasonable Jury could return a Verdict for the nonmoving

- 9 -

party.  See, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Planned</u>

<u>Parenthood of Minnesota/South Dakota v. Rounds</u>, 372 F.3d 969, 972 (8th Cir. 1004);

<u>Fenney v. Dakota, Minnesota & Eastern R.R. Co.</u>, 327 F.3d 707, 711 (8th Cir. 2003)

As Rule 56(e) makes clear, once the moving party files a properly supported

Motion, the burden shifts to the nonmoving party to demonstrate the existence of a

genuine dispute.  In sustaining that burden, "an adverse party may not rest upon the

mere allegations or denials of the adverse party's pleading, but the adverse party's

response, by affidavit or as otherwise provided in this Rule, must set forth specific

facts showing that there is a genuine issue for trial."  <u>Rule 56(e), Federal Rules of</u>

<u>Civil Procedure</u>; see also, <u>Anderson v. Liberty Lobby, Inc.</u>, supra at 256; <u>Eddings v.</u>

<u>City of Hot Springs, Ark.</u>, 323 F.3d 596, 602 (8th Cir. 2003).

Moreover, the movant is entitled to Summary Judgment where the nonmoving

party has failed "to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v.</u>

<u>Catrett</u>, supra at 322; see also, <u>Forest Park II v. Hadley</u>, 408 F.3d 1052, 1057 (8th Cir.

2005); <u>Mercer v. City of Cedar Rapids</u>, 308 F.3d 840, 843 (8th Cir. 2002); <u>Hammond</u>

<u>v. Northland Counseling Center</u>, Inc., 218 F.3d 886, 891 (8th Cir. 2000).  No genuine

issue of fact exists in such a case because "a complete failure of proof concerning an

essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, supra at 323; see also, Sallis v. University of Minnesota, 408 F.3d 470, 474 (8th Cir. 2005); Davis v. U.S. Bancorp, 383 F.3d 761, 768 (8th Cir. 2004); Bell Lumber and Pole Co. v. United States Fire Ins. Co., 60 F.3d 437, 441 (8th Cir. 1995).

2.   Legal Analysis.  On January 25, 2008, the Plaintiff filed a Motion for Summary Judgment.  See, Plaintiff's Motion for Summary Judgment, Docket No. 17.  However, his Motion was plainly based upon what he deemed the Defendant's failure to respond to the Complaint.  Id. at p. ii ("Please take notice that this motion is made following 20 expired days from the date of the local U.S. Attorney's Notice of Appearance; 21 expired days from the date of service of summons and complaint to the Attorney-General of the United States and local U.S. Attorney; and 36 expired days from the date of service of summons and complaint to the Defendant * * * .") [emphasis in original].

A defendant must typically file an Answer, or some other responsive pleading, within twenty (20) days of being served with the Summons and Complaint.  See, Rule 12(a)(1)(A), Federal Rules of Civil Procedure.  However, where, as here, "[t]he United States, a United States agency, or a United States officer or employee [is] sued

- 11 -

only in an official capacity," no Answer is required until sixty (60) days after service on the United States Attorney. <u>Rule 12(a)(2)</u>, <u>Federal Rules of Civil Procedure</u>.

On January 10, 2008, an Affidavit of Service was filed, which disclosed that the United States Attorney was served on December 21, 2007. See, <u>Docket No. 14</u>. Accordingly, the Defendant's Answer was initially due by no later than February 19, 2008. However, on February 12, 2008, counsel for the Defendant filed a Motion for an Extension of Time to file an Answer, until February 26, 2008, see, <u>Docket No. 21</u>, which we granted by Order dated February 13, 2008. See, <u>Docket No. 24</u>. Thereafter, on February 26, 2008, the Defendant duly filed a Motion to Dismiss the Plaintiff's Complaint, based upon the assertion that the Plaintiff had failed to exhaust his administrative remedies. See, <u>Defendant's Motion to Dismiss</u>, <u>Docket No. 29</u>.

We acknowledge that the Plaintiff has asserted that there are no genuine issues of material fact, and therefore, that he is entitled to Judgment as a matter of law. See, <u>Plaintiff's Motion for Summary Judgment</u>, supra at p. 1. However, the Plaintiff made that assertion, based upon his contention that the Defendant had failed to file an Answer, or otherwise defend against his claims.[5] As noted, the Defendant timely filed

---

[5]Indeed, in his response to the Defendant's Motion to Dismiss, the Plaintiff continues to argue that he is entitled to "default judgment as Defendant did not answer within the 60 day time limit (pending Chief Magistrate Judge Erickson's decision on

a Motion to Dismiss, in which are asserted affirmative defenses to the Plaintiff's claims.   See, <u>Johnson v. Allied Interstate Inc.</u>, 2002 WL 1906024 at *2 (D. Minn., August 19, 2002)("Although the entry of a default against Allied would have been warranted as of the date Johnson brought her motion for default judgment, no default was entered on the docket pursuant to Rule 55(a), and the Court cannot ignore the fact that an Answer has now been filed and Allied is prepared to defend the lawsuit on the merits.").  Here, we are not even faced with an untimely responsive pleading.  Instead, the Defendant timely filed a Motion to Dismiss, and is prepared to defend this case on

---

Plaintiff's claim that Defendant did not show 'good cause' for extension of time"[)] -- apparently because he believes that the Defendant's Answer was initially due on February 12, 2008 -- rather than February 19, 2008 -- and because we did not grant the Defendant's Motion for an Extension of Time until February 13, 2008.  See, <u>Plaintiff's Memorandum in Opposition</u>, <u>Docket No. 34</u>, at 8.  As explained below, the Plaintiff's contentions, regarding the timeliness of the Defendant's Answer, are without merit.

the merits.[6]   The Plaintiff's assertion, that there is no dispute of material fact, therefore, is without a basis.

Accordingly, we agree with the Defendant, that the Plaintiff's Motion for Summary Judgment is premature.  Accordingly, we recommend that the Plaintiff's Motion for Summary Judgment be denied, but without prejudice, and we turn to address the merits of the Defendant's Motion to Dismiss.

B.    The Defendant's Motion to Dismiss.

1.    Standard of Review.  When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and "construe those facts in the light most favorable to the [nonmoving party]."  Riley v.

---

[6]Moreover, the Plaintiff did not seek, and obtain, a Clerk's entry of default, prior to filing his self-styled Motion for Summary Judgment, or Default Judgment. See, Rule 55(a), Federal Rules of Civil Procedure ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, and the fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.").  Only after an application is made, and granted under Rule 55(a), can a plaintiff seek a Default Judgment.  See, Johnson v. Dayton Electric Manufacturing Co., 140 F.3d 781, 783 (8th Cir. 1998)("When a party 'has failed to plead or otherwise defend' against a pleading listed in Rule 7(a), entry of default under Rule 55(a) must precede grant of a default judgment under Rule 55(b)."); United States v. Woods, 2004 WL 790332 at *3 (D. Minn., March 31, 2004)("Rule 55(b)(2) commits the entry of a default judgment to the discretion of the district court."), citing FTC v. Packers Brand Meats, Inc., 562 F.2d 9, 10 (8th Cir. 1977); see also, Harris v. St. Louis Police Dept., 164 F.3d 1085, 1086 (8th Cir. 1998).

St. Louis County, 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178 (1999), citing Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.23d 554, 556 (8th Cir. 1998); see also, Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).  In addition, all reasonable inferences, from the facts alleged in the Complaint, must also be drawn in favor of the nonmoving party. See, Maki v. Allete, Inc., supra at 742.  "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief."  Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001), citing Breedlove v. Earthgrains Baking, 140 F.3d 797, 799 (8th Cir. 1998); see also, Maki v. Allete, supra at 742; Helleloid v. Independent School Dist. No. 361, 149 F. Supp. 2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity."  Young v. City of St. Charles, supra at 627, citing Neitzke v. Williams, 490 U.S. 319, 326-27 (1989).  "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions."  Id., citing Springdale Educ. Ass'n v. Springdale Sch. Dist., 133 F.3d 649, 651 (8th Cir. 1998).

A Motion to Dismiss can be converted to a Rule 56 Motion for Summary Judgment if "matters outside the pleadings are presented to and not excluded by the court." Rule 12(b), Federal Rules of Civil Procedure. However, a Court may consider some information, which is not contained within the Complaint -- such as materials that are part of the public record, and materials that are necessarily embraced by the pleadings -- without transforming the Motion into one for Summary Judgment. See, Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); see also, Enervations, Inc. v. Minnesota Mining and Manufacturing Co., 380 F.3d 1066, 1069 (8th Cir. 2004); Stahl v. United States Department of Agriculture, 327 F.3d 697, 700 (8th Cir. 2003). Here, we have considered the Exhibits, and Affidavits, which were submitted by the Plaintiff, and which are referenced in his Complaint. Since our decision rests entirely upon the pleadings, and materials that are necessarily embraced by the pleadings, we analyze the Defendant's Motion under the framework of Rule 12(b)(6), rather than under the regimen of Rule 56. With these precepts in mind, we turn to the Defendant's Motion to Dismiss.

      2.    The Plaintiff's Claim under the Social Security Act. The Defendant first contends that, at no time prior to the filing of his Complaint, did the Plaintiff exhaust his available administrative remedies for challenging the amount of

his monthly benefits and any withholdings, before an ALJ, and the Appeals Council.

Since the Plaintiff did not seek administrative review, we find that we are unable to

exercise jurisdiction over his claims, insofar as he challenges any deductions from his

monthly benefits.

a.    Standard of Review.    Under the Social Security Act, the

jurisdiction of Federal Courts to review the final decisions of the Commissioner is

constrained as follows:

> Any individual, after any final decision of the
> Commissioner of Social Security made **after a hearing to**
> **which he was a party**, irrespective of the amount in
> controversy, may obtain a review of such decision by a
> civil action commenced within sixty days after the mailing
> to him of such decision or within such further time as the
> Commissioner of Social Security may allow.  * * *

Title 42 U.S.C. §405(g)[emphasis added].

Exhaustion means proceeding through all stages of the administrative appeals process

such that the claimant receives a "final decision of the Commissioner of Social

Security." Title 42 U.S.C. §405(g). The provision "clearly limits judicial review to

a particular type of agency action, a final decision of the [Commissioner] made after

a hearing." Califano v. Sanders, 430 U.S. 99, 108 (1977). In Sanders, the Supreme

Court reasoned that an interpretation of Section 405(g) "that would allow a claimant

judicial review simply by filing -- and being denied -- a petition to reopen his claim would frustrate the congressional purpose, plainly evidenced in [Section 405(g)], to impose a 60-day limitation upon judicial review of the [Commissioner's] final decision on the initial claim for benefits." Id. at 108.

In order to warrant a waiver of the administrative remedies, under Title 42 U.S.C. §405(g), such that subject matter jurisdiction could exist over the Plaintiff's claim against the Commissioner, the Plaintiff must show that: "(1) [his] claim is collateral to [his] claim for disability benefits;  (2) irreparable injury will follow;  and (3) exhaustion would otherwise be futile."  Titus v. Sullivan, 4 F.3d 590, 592 (8th Cir. 1993), quoting Bowen v. City of New York, 476 U.S. 467 (1986); Schoolcraft v. Sullivan, 971 F.2d 81, 85 (8th Cir. 1992), cert. denied, 510 U.S. 1081 (1994). However, "if jurisdiction is not available under §405(g), the district court may also review the [Commissioner's] decision if the plaintiff alleges a colorable claim of unconstitutionality." Boock v. Shalala, 48 F.3d 348, 351 (8th Cir. 1995).

        b.    Legal Analysis.  Here, although the Plaintiff does not cite the Social Security Act as the basis for his Complaint, in his first two (2) claims, he effectively challenges what he contends is the erroneous withholding of Medicare premiums from his monthly benefits.  See, Complaint, supra at ¶¶19-31.  In his

- 18 -

Complaint, the Plaintiff asserts that he has exhausted his administrative remedies, based upon his contention that he submitted a Request for Hearing to his local SSA office, but that the office refused to accept it. <u>Id.</u> at ¶1; see also, <u>Plaintiff's Memorandum in Opposition</u>, <u>Docket No. 34</u>, at 1, 3.

Although the Plaintiff contends that he submitted a Request for Hearing before an Administrative Law Judge ("ALJ"), he did not wait until a Hearing could be conducted, nor did he obtain a decision from an ALJ, prior to filing his present Complaint. In order to exhaust his administrative remedies, the Plaintiff had to obtain a decision from an ALJ after a Hearing, see, <u>20 C.F.R. §404.929</u>, and, if dissatisfied with the outcome, seek review from the Appeals Council. See, <u>20 C.F.R. §404.967</u>. The Appeals Council can either deny review, and allow the ALJ's decision to stand as the final determination of the Commissioner, or it can issue its own decision. See, <u>20 C.F.R. §404.981</u>. In either case, only then does the case become ripe for judicial review. <u>Id.</u>; see also, <u>Grissom v. Barnhart</u>, 416 F.3d 834, 836 (8th Cir. 2005); <u>Steahr v. Apfel</u>, 151 F.3d 1124, 1125 (8th Cir. 1998); <u>Johnson v. Chater</u>, 108 F.3d 942, 943-44 (8th Cir. 1997).

The Plaintiff contends that his local SSA office would not accept his Request for Hearing, when he presented it, in person, on October 3, 2007. See, <u>Complaint</u>,

supra at ¶17.  However, he also contends that he mailed his Request for Hearing to both the local SSA office, on September 21, 2007, and to the Minneapolis SSA office, on October 3, 2007.  Id. at ¶14.  The Plaintiff has not submitted any final decision, from an ALJ, or the Appeals Council, for our review, and it is plain that he did not wait for any Hearing to be conducted, prior to filing his Complaint in this action.

Moreover, the Defendant has submitted a Declaration from Earnest Baskerville ("Baskerville"), who is the Chief of Court Case Preparation for the SSA's Office of Disability Adjudication and Review, with respect to any cases which arise in the State of Minnesota.  See, Baskerville Decl., supra at ¶¶1, 3.  Baskerville attests that he has reviewed the SSA's records which pertain to the Plaintiff, and he confirms that the Plaintiff has not obtained any Hearing decision from an ALJ, nor any decision from the Appeals Council, with respect to the challenged deductions.  Id. at ¶3.

The Record, therefore, makes clear, and the Plaintiff effectively admits, that no Hearing has been conducted, with respect to the challenged deduction, and that he has not received any final determination from an ALJ or the Appeals Council.  See, Grisso v. Apfel, 219 F.3d 791, 793 (8th Cir. 2000)("To the extent Grisso's mandamus petition sought reimbursement of benefits, we agree with the district court that it lacked jurisdiction to review such a claim absent exhaustion of administrative remedies.").

- 20 -

Moreover, we find no responsible basis upon which to apply any of the grounds warranting a waiver of the exhaustion requirement.[7]

As a consequence, we conclude that we are without jurisdiction, under the Social Security Act, or otherwise, to review the Plaintiff's challenges to the amount of his monthly benefits. Accordingly, we recommend that the Defendant's Motion to Dismiss, as it relates to the Plaintiff's first two (2) claims, be granted, as we are without jurisdiction to consider them.

2.     The Plaintiff's Claims under the Federal Tort Claims Act.

a.     Standard of Review. To bring a claim under the FTCA, a party must fully comply with all of the conditions and requirements prescribed by the Act. See, Bellecourt v. United States, 994 F.2d 427, 430 (8th Cir. 1993), cert. denied, 510 U.S. 1109 (1994). One of the primary requirements of the FTCA is found in the first sentence of Title 28 U.S.C. §2675(a), which states as follows:

> An action shall not be instituted upon a claim against the
> United States for money damages for injury or loss of
> property or personal injury or death caused by the negligent

---

[7]The Plaintiff has not alleged any constitutional violations. In addition, he has submitted evidence which reveals that he has received a refund of the challenged deduction. See, Plaintiff's Exhibits to Complaint, supra at B-1. Accordingly, we find no basis upon which to conclude that he faces irreparable harm, if we decline to consider his claims on the merits.

> or wrongful act or omission of any employee of the
> Government while acting within the scope of his office or
> employment, unless the claimant shall have first presented
> the claim to the appropriate Federal agency and his claim
> shall have been finally denied by the agency in writing and
> sent by certified or registered mail.

Title 28 U.S.C. §2675(a).

As the statutory language makes plain, a party cannot bring a lawsuit under the FTCA,

without first exhausting his or her administrative remedies by presenting a written

claim for relief to "the appropriate Federal agency."  See, Duncan v. Department of

Labor, 313 F.3d 445, 447 (8th Cir. 2002)("Although the Federal Tort Claims Act

creates several exceptions to the United States' sovereign immunity, it requires the

claimant to first 'present[] the claim to the appropriate Federal agency.'"), quoting

Title U.S.C. §2675(a); see also, McCoy v. United States, 264 F.3d 792, 794 (8th Cir.

2001)("An action may not be commenced in federal court under the FTCA unless the

plaintiff has first presented his claim to the appropriate federal agency, and that claim

has been denied."), cert. denied, 535 U.S. 1053 (2002).

   In addition, an FTCA claimant must file his or her administrative claim within

two (2) years after the claim accrued.  See, McCoy v. United States, supra at 794

("'[A] tort claim against the United States shall be forever barred unless it is presented

in writing to the appropriate Federal agency within two years after such claim

accrues.'"), quoting Title 28 U.S.C. §2401(b); see also, Garza v. United States Bureau

of Prisons, 284 F.3d 930, 934 (8th Cir. 2002)("Under the FTCA, a tort claim against

the United States must be presented in writing to the appropriate federal agency within

two years after the claim accrues or it is time barred."). Furthermore, "[a] plaintiff's

compliance with the two-year limitations period is a jurisdictional prerequisite, since

FTCA acts as a waiver of the federal government's sovereign immunity." McCoy v.

United States, supra at 794. Therefore, if an FTCA claimant does not file an

administrative claim for relief within two (2) years after the claim accrues, any

subsequent FTCA lawsuit, which is based on that claim, must be dismissed for lack

of subject matter jurisdiction.

       b.    Legal Analysis. The Defendant contends that, even if the

Plaintiff's tort claims could be considered distinct from any claim under the Social

Security Act, the Plaintiff has failed to exhaust his administrative remedies under the

FTCA. See, Defendant's Memorandum in Support, Docket No. 30, at 11. In support

of this assertion, the Defendant has submitted the Declaration of John A. Carlo

("Carlo"), who is a Director with the Office of the General Counsel for the SSA. See,

Declaration of John A. Carlo, Docket No. 31. Carlo attests that he has reviewed the

files of the SSA, and he confirms that the Plaintiff has not filed any claim, pursuant to the FTCA, with the SSA.  <u>Id.</u> at ¶¶2-3.

The Plaintiff admits that he did not file an administrative claim prior to filing this lawsuit, but he argues that such remedies were not available to him, because his complaint was against an SSA employee in the local SSA office.  See, <u>Plaintiff's Memorandum in Opposition</u>, supra at pp. 4-6 ("The Plaintiff was speaking with the very chief/head/director/ [sic] of the SSA local field office. * * * [H]ow could the Plaintiff file a claim regarding 'abuse during the process of appeal of a claim'?").  However, as noted by the Defendant, the Plaintiff was required to file an FTCA claim with the SSA's Claims Office in Baltimore, Maryland -- not with the local SSA office -- in order to seek an agency determination, which would allow for judicial review.  See, <u>Defendant's Memorandum in Support</u>, supra at 12 n. 7, citing <u>20 C.F.R. §§429.102, 429.105, 429.106</u>.  Accordingly, to the extent that the Plaintiff is asserting that filing an administrative claim would have been futile, his argument is based on an incorrect premise -- namely, that his local SSA office would be responsible for investigating his tort claims.

In sum, the Plaintiff has made no effort to contest the Defendant's contention, that he has failed to exhaust his administrative remedies, with respect to any tort claim

under the FTCA.  Therefore, we recommend that the Defendant's Motion to Dismiss be granted, with respect to all of the Plaintiff's FTCA claims.  However, as a final matter, the Plaintiff alleges that his monthly benefits were reduced, first in April of 2006, and then in December of 2006, giving rise to his claims for reimbursement, while the alleged conduct of Ms. McCanon and Mr. Baker, which gives rise to the Plaintiff's NIED claims, occurred between June and October of 2007.  As we have detailed, an FTCA claim must be "presented in writing to the appropriate Federal agency within two years after such claim accrues."  Title 28 U.S.C. §2401(b).  Given this circumstance, we recommend that the Plaintiff's tort claims be dismissed, but without prejudice, so that he may pursue any administrative remedies which may remain available to him.

3.     The Privacy Act.  Lastly, we briefly address the Plaintiff's citations to the Privacy Act, in the interests of thoroughness.   In his Complaint, the Plaintiff does not identify any claim under the Privacy Act; instead, he cites to Title 5 U.S.C. §552a(g)(1) as a jurisdictional basis for this action.  See, Complaint, supra at ¶2.  The Plaintiff also quotes the Privacy Act, in his memorandum, but again, without identifying any factual basis for a claim under the Privacy Act.  See, Plaintiff's Memorandum in Opposition, supra at 2.

- 25 -

Specifically, the Plaintiff cites two (2) provisions of the Privacy Act, which provide for civil remedies, as follows:

> Whenever any agency * * *
>
>> (C) fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual; or
>>
>> (D) fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual,
>
>> the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.
>
> Title 5 U.S.C. §552a(g)(1).

Construing his Complaint generously, the Plaintiff appears to allege that the SSA failed to accurately maintain his records, when it concluded that the State of Minnesota was no longer paying his Medicare premiums.  See, Complaint, supra at ¶¶7-9.

- 26 -

As relief, however, the Plaintiff seeks only damages, rather than any injunctive or declaratory relief.  Id. at pp. 6-7.  "In order to state a claim for **damages** under the Privacy Act, plaintiff must demonstrate a willful or intentional failure to maintain accurate records."  Barhorst v. Marsh, 765 F. Supp. 995, 999 (E.D. Mo. 1991) [emphasis added], citing Tuesburg v. United States Dep't of Housing & Urban Dev., 652 F. Supp. 1044, 1048 (E.D. Mo. 1987); see also, Title 5 U.S.C. §552a(g)(4)("In any suit brought under the provisions of subsection (g)(1)(C) or (D) of this section in which the court determines that the agency acted in a manner which was **intentional or willful**, the United States shall be liable to the individual" for damages); Bruce v. United States, 621 F.2d 914, 917 (8th Cir. 1980)("The United States is liable for damages for the type of violation here alleged only when the agency 'acted in a manner which was intentional or willful.'").

The Plaintiff has alleged that the SSA's records were inaccurate, insofar as the records indicated that the State of Minnesota had stopped paying his Medicare premiums, and such an inaccuracy could be actionable under Section 552a(g)(1)(C), if it resulted in an adverse determination.  Id. at ¶¶7-8.  Here, however, the Plaintiff has not alleged that the SSA's failure to maintain accurate records was intentional or willful -- in fact, in his Complaint, the Plaintiff explains that the SSA's records were

not accurate because of his **own** failure to provide timely updates to his County case worker.  Id. at ¶9 (relating a comment by the Plaintiff's case worker, that "because Plaintiff was sometimes late in renewing his Hennepin County Case * * * every six months, SSA must have thought the State of Minnesota stopped paying his premiums."); compare Sussman v. U.S. Marshals Service, 494 F.3d 1106, 1122 (D.C. Cir. 2007)("An agency acts in an intentional or willful manner either by committing the act without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act," and "[t]he violation must be so patently egregious and unlawful that anyone undertaking the conduct should have known it unlawful.") [internal quotations and citations omitted]; Reinbold v. Evers, 187 F.3d 348, 361 n. 14 (4th Cir. 1999); Pippinger v. Rubin, 129 F.3d 519, 530 (10th Cir. 1997).[8]

Accordingly, the Plaintiff has failed to allege any intentional or willful conduct, with respect to the allegedly inaccurate records, which would support a claim for

_____

[8]The Plaintiff "must further demonstrate a 'causal relationship between the allegedly erroneous record and an adverse determination based on that record.'" Barhorst v. Marsh, 765 F. Supp. 995, 999 (E.D. Mo. 1991), quoting Hubbard v. United States E.P.A. Administrator, 809 F.2d 1, 5 (D.C. Cir. 1986).  As previously addressed, the Plaintiff has submitted evidence which shows that the premium deductions were ultimately refunded.  See, Plaintiff's Exhibits to Complaint, supra at B-1.  In addition, the Plaintiff has not offered any administrative decision for our review.  As a result, it is difficult to conceive of any "adverse determination" as alleged by the Plaintiff, if any.

damages.  Therefore, we find no basis upon which to conclude that the Plaintiff's

Complaint has stated a claim, pursuant to the Privacy Act, Title 5 U.S.C. §552a(g)

(1)(C).  In addition, notwithstanding his citation to Section 552a(g)(1)(D), our review

of the Plaintiff's Complaint, and its incorporated materials, has failed to reveal any

basis for a claim under that statutory provision.[9]  As a result, we conclude that the

Plaintiff has failed to state any claim under the Privacy Act, and his bare citation to

that statute does not impair our recommendation, that his Complaint be dismissed in

its entirety.

In sum, we find that the Defendant's Motion to Dismiss disposes of all of the

Plaintiff's claims, as alleged in his Complaint, and therefore, we recommend that the

Defendant's Motion to Dismiss, as to the Plaintiff's claims under the Social Security

Act, be granted, for failure to exhaust his administrative remedies.  We similarly

---

[9]Pursuant to Section 552a(e)(2) of the Privacy Act, "[e]ach agency that maintains a system of records shall collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits, and privileges under Federal programs."  However, even if this provision forms the basis for the Plaintiff's claim under Section 552a(g)(1)(D), the Plaintiff's claim for damages cannot stand, based upon his failure to allege any intentional or willful conduct.  See, Darst v. Social Security Administration, 172 F.3d 1065, 1067 (8th Cir. 1999)("In order to obtain relief under section 552a(e)(2) of the Privacy Act, the plaintiff must show * * * the defendant acted in an intentional or willful manner.")[citations omitted].

recommend that the Defendant's Motion to Dismiss be granted, as to all of the Plaintiff's FTCA claims, for a failure to exhaust his administrative remedies, but that dismissal should be without prejudice.

NOW, THEREFORE, It is --

RECOMMENDED:

1.     That the Plaintiff's Motion for Summary Judgment [Docket No. 17] be denied, but without prejudice.

2.     That the Defendant's Motion to Dismiss [Docket No. 29] be granted, as to the Plaintiff's claims under the Social Security Act, for failure to exhaust his administrative remedies.

3.     That the Defendant's Motion to Dismiss [Docket No. 29] be granted, as to the Plaintiff's claims under the Federal Tort Claims Act, for failure to exhaust his administrative remedies, but without prejudice.

4.      That the Plaintiff's Complaint be dismissed, in its entirety.


Dated:  July 14, 2008                              *s/Raymond L. Erickson*
                                                  Raymond L. Erickson
                                                  CHIEF U.S.  MAGISTRATE JUDGE


## NOTICE

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties by no later than **July 31, 2008**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing by no later than **July 31, 2008**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.